UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES,<br><br>Plaintiff,<br><br>V.<br><br>PAUL MICHAJLYSZYN,<br><br>Defendant. | Case:2:14-cr-20177<br>Judge: Tarnow, Arthur J.<br>MJ: Majzoub, Mona K.<br>Filed: 03-27-2014 At 04:18 PM<br>INDI USA V. SEALED MATTER (TAM)<br><br>HONORABLE:<br><br>VIOLATIONS:<br>18 U.S.C. 371<br>(Conspiracy)<br>26 U.S.C. 7206<br>False Tax Returns) |

_____/

## INDICTMENT

**THE GRAND JURY CHARGES:**

### COUNT ONE
### (18 U.S.C. 371) (Conspiracy)

1. At times pertinent to this Indictment, defendant PAUL MICHAJLYSZYN was employed by Odyssey Industries, Inc. ("Odyssey") as a Vice President and lived in Leonard, Michigan.

2. Odyssey was a Michigan corporation engaged in the business of producing machine tools for the aviation industry with its principal places of business in Lake Orion, Michigan.

3. As a byproduct of the processes Odyssey used to manufacture machine tools for the aviation industry, it generated scrap metal which was sold to scrap dealers.

**The Conspiracy and its Objects**

4. From in or about 2001 until in or about August 2009, the exact dates being unknown to the Grand Jury, in the Eastern District of Michigan and elsewhere, MICHAJLYSZYN and other co-conspirators did knowingly and willfully conspire, combine, and agree to defraud the United States by impeding, impairing, obstructing, and defeating the lawful functions of the Internal Revenue Service of the U.S. Treasury Department in the ascertainment, computation, assessment, and collection of revenue and income taxes.

5. It was also an object of the conspiracy to file false tax returns which did not include the other income which the co-conspirators received from the scrap-for-cash scheme described herein.

6. During the time period of the conspiracy, MICHAJLYSZYN and his co-conspirator arranged for proceeds from the sale of Odyssey's scrap metal to be paid in cash to MICHAJLYSZYN; this was done to conceal the receipt of the cash, diverting the money to the co-conspirators' use and concealing it

from the Internal Revenue Service of the U.S. Treasury Department by not reporting it as income on their income tax returns, while both co-conspirators were aware that neither of them intended to declare, and had not declared, the cash income on their tax returns.

**The Conspiracy's Manner and Means**

7. The conspiracy was accomplished by MICHAJLYSZYN and another co-conspirator in the Eastern District of Michigan and elsewhere by the following manner and means.

8. During the time period of the conspiracy, MICHAJLYSZYN with the knowledge and agreement of his co-conspirator, arranged with a scrap metal dealer ("Dealer A") that Dealer A would pay MICHAJLYSZYN in cash for the scrap metal produced by Odyssey from its manufacturing operations.

9. Pursuant to that arrangement, Dealer A, would take delivery of scrap metal produced by Odyssey and in exchange would give cash to MICHAJLYSZYN in an envelope and other containers at various meeting points.

10. After receiving cash from the scrap dealer, MICHAJLYSZYN would keep approximately 10% to 20% of it for himself and give the remainder to his co-conspirator at Odyssey's offices in Lake Orion, Michigan.

11. On numerous occasions, the co-conspirator removed the portion of the cash left for him by MICHAJLYSZYN and took it to his residence in the Eastern District of Michigan.

12. During the time period of the conspiracy, MICHAJLYSZYN and his co-conspirator discussed among themselves that they were not reporting the other income from the scrap-for cash scheme described herein on their federal tax returns.

13. During the time period of the conspiracy, MICHAJLYSZYN and his co-conspirator filed tax returns with the Internal Revenue Service of the U.S. Department of the Treasury which did not report the other income they received from the scrap-for-cash scheme described herein, and the tax returns were therefore false.

**Overt Acts Furthering the Conspiracy**

14. In furtherance of the conspiracy and to affect its illegal objects, MICHAJLYSZYN and his co-conspirator, committed the following overt acts, among others, in the Eastern District of Michigan and elsewhere.

15. MICHAJLYSZYN and his co-conspirator authorized and caused scrap metal generated by the manufacturing process at Odyssey to be delivered to Dealer A on or about the following dates and on other occasions, known and unknown, including: January 19, 2005; June 14, 2005; June 27, 2005; August 4, 2005; August 24, 2005; December 4, 2005; January 31, 2006; March 1, 2006; April 13, 2006; June 23, 2006; August 19, 2006; September 4, 2006; November 16, 2006; November 20, 2006; December 16, 2006; February 22, 2007; March 28, 2007; May 18, 2007; June 4, 2007; June 15, 2007; August 18, 2007; October 15, 2007; November 8, 2007; December 13, 2007; January 3, 2008; February 5, 2008; March 12, 2008; August 22, 2008; December 9, 2008; February 18, 2009; May 22, 2009; June 22, 2009; August 10, 2009; August 28, 2009; August 30, 2009; August 31, 2009; September 28, 2009; October 27, 2009; October 29, 2009; January 30, 2010; March 15, 2010; March 23, 2010; May 10, 2010; May 27, 2010; July 1, 2010; July 26, 2010 and July 31, 2010.

16. MICHAJLYSZYN and his co-conspirator accepted cash payments from Dealer A for the scrap metal generated by the manufacturing process at Odyssey on or about the following dates and on other occasions, known and unknown, including: January 19, 2005; June 14, 2005; June 27, 2005; August 4, 2005; August 24, 2005; December 4, 2005; January 31, 2006; March 1, 2006; April 13, 2006; June 23, 2006; August 19, 2006; September 4, 2006; November 16, 2006; November 20, 2006; December 16, 2006; February 22, 2007; March 28, 2007; May 18, 2007; June 4, 2007; June 15, 2007; August 18, 2007; October 15, 2007; November 8, 2007; December 13, 2007; January 3, 2008; February 5, 2008; March 12, 2008; August 22, 2008; December 9, 2008; February 18, 2009; May 22, 2009; June 22, 2009; August 10, 2009; August 28, 2009; August 30, 2009; August 31, 2009; September 28, 2009; October 27, 2009; October 29, 2009; January 30, 2010; March 15, 2010; March 23, 2010; May 10, 2010; May 27, 2010; July 1, 2010; July 26, 2010 and July 31, 2010.

17. On numerous occasions, MICHAJLYSZYN and his co-conspirator signed, authorized to be filed, and filed false federal tax returns which omitted the cash income they received from the scrap-for-cash scheme described above.

18. For tax years 2004 through 2008, MICHAJLYSZYN filed tax returns which were false in that they did not include all his income; specifically, as noted below, the returns omitted the cash income he received from the scrap-for-cash scheme. The table below summarizes the false returns:

| Tax Year and Adjusted Gross Income Reported | Other Income Omitted (Cash) |
|---|---|
| 2004 $207,489 | $31,037 |
| 2005 $210,598 | $48,102 |
| 2006 $266,501 | $47,368 |
| 2007 $283,305 | $77,528 |
| 2008 $1,015,090 | $66,448 |

## COUNTS TWO & THREE

**(26 U.S.C. 7206(1))(False Tax Returns)**

19. Paragraphs 1-3, 8-18 above are incorporated by reference as if set forth in full herein.

20. On or about the dates set forth below, in the Eastern District of Michigan, Southern Division, Defendant

PAUL MICHAJLYSZYN

did willfully make and subscribe, or cause to be made and subscribed, United States Individual Income Tax Returns (Form 1040), for the calendar years 2007 and 2008, which returns were each verified by a written declaration that it was made under the penalties of perjury and filed with the Director, Internal Revenue Service, and which returns MICHAJLYSZYN did not believe to be true and correct as to every material matter, because each tax return reported an amount of income as set forth below which was not true and correct, as MICHAJLYSZYN's gross income for calendar years 2007 and 2008 was an amount in excess of that reported on the returns, while the returns stated the defendant did not receive any "other income" and that his total income was as noted below, whereas, as he then and there well knew and believed, he had received other income from the

scrap-for-cash scheme described herein, to wit:

| Count & Year Involved | Date Tax Return Filed | Adjusted Gross Income Reported & Amount Omitted (Cash) |
|---|---|---|
| Count: 2<br>Year: 2007 | 04/15/08 | $283,305 (Reported)<br>($77,528)(Omitted) |
| Count: 3;<br>Year: 2008 | 04/15/09 | $1,015,090 (Reported)<br>($66,448)(Omitted) |

**All done in violation of Title 26, United States Code, Section 7206(1).**

THIS IS A TRUE BILL

 /s/ Grand Jury Foreperson
GRAND JURY FOREPERSON


BARBARA L. McQUADE
United States Attorney

/s/Ross I. MacKenzie
ROSS I. MacKENZIE
Chief, Complex Crimes Unit

/s/Christopher L. Varner
CHRISTOPHER L. VARNER
Assistant United States Attorney


Dated: March 27, 2014

**ORIGINAL**

| United States District Court<br>Eastern District of Michigan | Criminal Case C | Case: 2:14-cr-20177<br>Judge: Tarnow, Arthur J.<br>MJ: Majzoub, Mona K.<br>Filed: 03-27-2014 At 04:18 PM<br>INDI USA V. SEALED MATTER (TAM) |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to c

**Reassignment/Recusal Information** This matter was opened in the USAO prior to August 15, 2008   [ ]

| Companion Case Information | Companion Case Number: |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: |
| ☐ Yes     ☒ No | AUSA's Initials:  CLV |

**Case Title:** USA v.  PAUL MICHAJLYSZYN

**County where offense occurred :** OAKLAND

**Check One:**     ☒ Felony         ☐ Misdemeanor         ☐ Petty

____Indictment/____Information --- **no** prior complaint.
____Indictment/____Information --- based upon prior complaint [Case number:                    ]
____Indictment/____Information --- based upon **LCrR 57.10 (d)** *[Complete Superseding section below]*.

**Superseding Case Information**

**Superseding to Case No:** _____   **Judge:** _____

☐ Original case was terminated; no additional charges or defendants.
☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| Defendant name | Charges | Prior Complaint (if applicable) |
|---|---|---|

Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.

March 27, 2014
       Date

*/s/ Christopher L. Varner*
Christopher L. Varner
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226-3277
Phone: (313) 226-9684
Fax:     (313) 226-0816
E-Mail address: Christopher.varner@usdoj.gov
Attorney Bar #:

---
[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.                                                            04/13